



FILED

Dec 19 2023, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 22S-DI-413

## In the Matter of
## Marco Antonio Genesis Moreno,
*Respondent.*

---

Decided: December 19, 2023

Attorney Discipline Action

Hearing Officer Alicia A. Gooden

---

**Per Curiam Opinion**

Chief Justice Rush and Justices Massa, Slaughter, Goff, and Molter concur.

**Per curiam.**

We find that Respondent, Marco Antonio Genesis Moreno, committed attorney misconduct by neglecting numerous client matters, charging and collecting unreasonable fees, engaging in deceitful behavior, repeatedly failing to cooperate with disciplinary investigations, and ultimately abandoning his law practice. For this misconduct, we conclude Respondent should be disbarred.

This matter is before the Court on the report of the hearing officer this Court appointed to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Disciplinary Complaint." Respondent's 2003 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* Ind. Const. art. 7, § 4.

# Procedural Background and Facts

The Commission filed an eleven-count "Disciplinary Complaint" against Respondent on December 15, 2022. After Respondent failed to timely file an answer, the Commission filed a motion for judgment on the complaint, which the hearing officer granted following a hearing.

When judgment on the complaint is entered, the allegations set forth in the complaint are conclusively established as true. Ind. Admission and Discipline Rule 23(14)(c)(3). Further, no petition for review of the hearing officer's report and entry of judgment on the complaint has been filed. Accordingly, we accept and adopt the hearing officer's findings. *See Matter of Hamilton*, 34 N.E.3d 1204, 1205 (Ind. 2015).

Over the course of a year starting in August 2021, Respondent effectively abandoned his immigration law practice in Marion County. Eleven clients and one attorney filed grievances against him for similar misconduct including: (1) failing to be competent and diligent in his representation; (2) failing to communicate; (3) charging unreasonable fees; (4) failing to properly end his representation upon termination; and (5) engaging in deceitful behavior. Respondent's neglect had adverse consequences for several clients and required the clients to hire successor

counsel to remediate the harms Respondent caused. Respondent additionally failed to respond to the Commission's demands for information concerning the grievances, prompting the initiation of numerous show cause proceedings and, eventually, an indefinite suspension for serial noncooperation that remains in effect. *See Matter of Moreno*, 192 N.E.3d 902 (Ind. 2022). We summarize below some of the more egregious counts of misconduct, distilled from a disciplinary complaint comprising 34 pages and 225 rhetorical paragraphs.

"Client 1," a Korean national married to "Husband," retained Respondent to prepare a permanent residency application for her, paid Respondent $5,410, and provided Respondent with all the necessary documentation. Thereafter, Client 1 attempted to contact Respondent numerous times by phone and email, without success. During this time, Respondent changed the domain name of his email address without informing Client 1. After she was unable to contact Respondent, Client 1 contacted the United States Citizenship and Immigration Services office ("USCIS") directly and learned that none of the documentation she had provided to Respondent had been submitted to USCIS. Client 1 retained successor counsel ("Popp") and filed a grievance with the Commission. Shortly after, USCIS notified Client 1 it had received an application submitted on her behalf, even though Popp had not yet prepared or submitted anything. USCIS later sent Client 1 a request for evidence referencing Husband's signature on a form that Husband was not eligible to submit. In fact, Husband had neither signed nor submitted this form. Popp's numerous attempts to contact Respondent about the request for evidence and to obtain a copy of Client 1's file were unsuccessful. Respondent likewise failed to comply with the Commission's subpoena duces tecum for Client 1's file and—in response to a separate grievance filed by Popp—failed to address the authenticity of Husband's signature.

"Client 4" paid Respondent $5,000 to prepare U-visas[1] for his family, as well as some temporary work visas. Client 4's last contact with Respondent occurred in December 2021, when Respondent falsely told him that his pending matters were progressing as expected with USCIS. In fact, Respondent did not prepare any work product for Client 4's family, and Client 4 never received a receipt number from USCIS for any pending immigration matters concerning his family. Client 4 was unable to contact Respondent at any point after December 2021, and Respondent failed to respond to the Commission's investigation of Client 4's grievance.

"Client 7," who was Respondent's landlord, retained Respondent to represent Client 7's sister in an immigration matter on a flat-fee basis. They did not execute a written fee agreement. A landlord-tenant dispute occurred when Respondent dissolved his law practice. After the landlord sued Respondent, Respondent threatened a "noisy withdrawal" from the sister's immigration case and sent Client 7 an invoice demanding an additional payment of over $10,000.

"Client 8" retained Respondent on immigration and consular matters. Client 8 agreed to an $8,000 total payment and remitted $4,000 to Respondent as an initial retainer. Client 8 asked Respondent to prepare a written fee agreement, but Respondent never did. In the interim, Client 8 elected to renew his Employment Authorization Card and paid Respondent $400 to prepare the necessary application and paperwork. Respondent later demanded an additional $1,050 to complete the work Client 8 had already paid for. Soon after, Client 8 lost contact with Respondent and discovered Respondent had closed his law office. Client 8 eventually tracked Respondent down and met with him in the cab of his truck, at which time Client 8 learned Respondent had not prepared or filed any paperwork concerning the immigration or consular matters. Respondent later told Client 8 he had the renewed Employment Authorization Card, demanded an additional $4,225 from Client 8 in

---

[1] U-visas are residency visas for victims of violent crime and human trafficking.

exchange for the card, and told Client 8 he would file a collections lawsuit and a complaint with USCIS if Client 8 failed to pay. Respondent failed to respond to the Commission's investigation of this matter.

# Discussion

We concur in the hearing officer's findings of fact and conclude that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

> 1.1: Failing to provide competent representation.
>
> 1.3: Failing to act with reasonable diligence and promptness.
>
> 1.4: Failing to keep a client reasonably informed about the status of a matter and respond promptly to reasonable requests for information.
>
> 1.5(a): Making an agreement for, charging, or collecting an unreasonable fee.
>
> 1.16(d): Failing to protect a client's interests upon termination of representation.
>
> 8.1(b): Failing to timely respond to the Commission's demands for information.
>
> 8.4(c): Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
>
> 8.4(d): Engaging in conduct prejudicial to the administration of justice.

"[A] license to practice law is a privilege, and that privilege is conditioned upon the faithful performance of the responsibilities imposed upon the attorney by the society that grants the privilege." *Hamilton*, 34 N.E.3d at 1206–07 (quoting *Matter of Keaton*, 29 N.E.3d 103, 110 (Ind. 2015)). We find this case substantially on all fours with *Hamilton*. Like the attorney in that case, Respondent wholly abandoned his law practice, neglected and lied to his vulnerable clients, retained unearned funds, repeatedly failed to cooperate with the Commission's investigations, and

ultimately defaulted on his disciplinary proceedings. As we did in *Hamilton*, we conclude disbarment is warranted under these circumstances and Respondent's privilege to practice law should be permanently revoked.

## Conclusion

The Court concludes that Respondent violated the Indiana Rules of Professional Conduct as charged. Respondent already is under suspension orders for serial noncooperation and failure to fulfill his continuing legal education requirements. For Respondent's professional misconduct, the Court disbars Respondent from the practice of law in this state effective immediately. Respondent shall fulfill all the duties of a disbarred attorney under Admission and Discipline Rule 23(26).

The costs of this proceeding are assessed against Respondent and the hearing officer is discharged with the Court's appreciation.

Rush, C.J., and Massa, Slaughter, Goff, and Molter, JJ., concur.

RESPONDENT PRO SE
Marco Antonio Genesis Moreno
Indianapolis, Indiana

ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Adrienne L. Meiring, Executive Director
Akash Burney, Staff Attorney
Indianapolis, Indiana